Filed 2/13/25  P. v. Sandoval CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>JAMIE CHARLES SANDOVAL,<br><br>        Defendant and Appellant. | C098759<br><br>(Super. Ct. No. 11F00158) |

Defendant Jamie Charles Sandoval appeals from the trial court's denial of his Penal Code section 1170.95 (now section 1172.6)[1] petition for resentencing.  He contends the trial court engaged in impermissible fact finding at the prima facie stage.  The People agree.  We agree with the parties and will reverse the order denying defendant's petition for resentencing and remand the matter to the trial court for an evidentiary hearing.

_____

[1] Undesignated statutory references are to the Penal Code.  Defendant filed his petition under former section 1170.95.  Effective June 30, 2022, the Legislature renumbered section 1170.95 as section 1172.6 with no change in the text.  (Stats. 2022, ch. 58, § 10.) We will refer to the current section number.

BACKGROUND

To place defendant's petition in context, we provide certain underlying facts set forth in the preliminary hearing transcript that was attached to defendant's petition. Our decision does not rely on those facts.

In 2010, Danny and Brian Fountain lived at a house in the Meadowview neighborhood of Sacramento.[2] Danny sold methamphetamine out of a shed in the backyard. Scott Hansen also stayed at the house. Defendant used methamphetamine and knew Danny. Toward the end of the year, Danny accused defendant's girlfriend of stealing from him.

On December 31, defendant met with Bryan Smith, Joseph Conn, and Arsenio Barajas to plan a robbery of money or drugs from a safe that was in the shed in the backyard of the Meadowview house. The plan was for defendant to drive Smith, Conn, and Barajas to the house, drop them off, and then drive to a nearby school where they would meet him after committing the robbery. The plan also called for Smith, Conn, and Barajas to wear face coverings and carry weapons because defendant anticipated they would encounter resistance. Smith had a pickax handle, and Barajas had a piece of wood that could be used as a club. Conn had a pair of bolt cutters and carried a backpack containing tools for opening the safe.

At around midnight, defendant dropped his associates off as planned. Conn and Smith went into the backyard through a side gate. Barajas stayed behind and stood guard near the garage. When dogs at the house alerted the occupants to the intruders' presence, Hansen went outside to investigate. Conn hit him on the head with the bolt cutters, knocking him to the ground. Brian then came out of the house with a golf club. Brian and Smith swung their respective weapons at each other, while Danny ran out of the

---

[2] Because the Fountain brothers share the same last name, we will refer to them by their first names for clarity.

house to help his brother. Smith managed to knock the golf club out of Brian's hand with the pickax handle, but he was then taken to the ground by either Danny or Brian and placed in a choke hold. Smith yelled for help, prompting Barajas to come to the backyard. When Barajas got there, Conn was using the bolt cutters to beat someone on the ground. Barajas used his piece of wood to hit the person holding Smith, and he then kicked the person until Smith was released. Conn picked up the golf club and began swinging it wildly, accidentally hitting Barajas but also hitting Hansen and one of the Fountain brothers. The intruders fled from the backyard and ran to the school where defendant was waiting for them. Hansen died from blunt force trauma to his head, and Danny and Brian were injured.

Defendant, Conn, Smith, and Barajas were held to answer for special-circumstance murder, attempted murder, and attempted robbery. Defendant, Conn, and Barajas were tried together before separate juries. Defendant's jury found him guilty of attempted robbery, but could not reach a unanimous verdict with respect to the murder and attempted murder counts. The trial court declared a mistrial as to those counts.[3]

Thereafter, pursuant to negotiated plea agreement, defendant pleaded guilty to one count of voluntary manslaughter, two counts of attempted murder, one count of robbery, and one count of burglary. Defendant also admitted that he personally used a deadly or dangerous weapon and personally inflicted great bodily injury. With respect to the factual basis for the plea, the trial court stated that it presided over defendant's murder

---

[3] Conn's jury found him guilty on all counts and found the special circumstance allegation to be true. Barajas's jury found him guilty of murder and attempted murder but could not reach a unanimous verdict with respect to the attempted robbery count or the special circumstance allegation. Smith had pleaded guilty to attempted murder, attempted robbery, and being an accessory to murder. Defendant's girlfriend, who was present during the planning of the robbery, was also held to answer and had pleaded guilty to attempted robbery, assault with a deadly weapon, and being an accessory to murder.

3

trial and "heard all the evidence in this case." The parties stipulated that the trial court could consider that evidence as the factual basis for the plea. The plea agreement called for a stipulated sentence of 21 years four months. However, at the subsequent sentencing hearing, with respect to the weapon-use enhancement, the trial court stated that defendant was involved in bringing some of the codefendants and weapons to the scene and then was involved in picking up the codefendants when they left the scene. After stating that "there are certainly some ambiguities" with respect to whether the evidence supported defendant's personal-use admission, the trial court asked the parties whether they nevertheless "wanted this deal." The parties agreed that they did. The trial court imposed the stipulated sentence and defendant did not appeal.

In April 2022, defendant filed a petition for resentencing, seeking to vacate his voluntary manslaughter and attempted murder convictions given the changes to murder liability made by the Legislature in Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437), and thereafter clarified in Senate Bill No. 775 (2020-2021 Reg. Sess.) (Senate Bill 775). The trial court denied the petition without issuing an order to show cause or holding an evidentiary hearing.

Additional background is set forth in the discussion as relevant to the contention on appeal.

DISCUSSION

Defendant contends the trial court engaged in impermissible fact finding at the prima facie stage. The People agree.

A

"Murder is the unlawful killing of a human being . . . with malice aforethought." (§ 187, subd. (a).) Section 189 describes a number of unlawful killings that are statutorily defined as "murder of the first degree," including a killing "committed in the perpetration of, or attempt to perpetrate, [certain listed felonies, including] robbery." (§ 189, subd. (a).) This form of first degree murder, known as first degree felony murder,

4

does not require malice. Prior to Senate Bill 1437, " 'the only criminal intent required [was] the specific intent to commit the particular felony.' " (*People v. Dillon* (1983) 34 Cal.3d 441, 475.)

Effective January 1, 2019, Senate Bill 1437 amended the felony-murder rule to provide, in relevant part: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life . . . ." (§ 189, subd. (e).)

Senate Bill 1437 also eliminated the natural and probable consequences theory as a viable means of murder prosecution. (*People v. Curiel* (2023) 15 Cal.5th 433, 448-449.) It accomplished that result by amending section 188 to provide: "Except as stated in [section 189, subdivision (e)], in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

The bill also created a procedure for those convicted of a qualifying offense to seek vacatur of their conviction and resentencing on any remaining counts. (See § 1172.6.) Senate Bill No. 775 makes clear that persons convicted of manslaughter and attempted murder can also seek resentencing relief under that procedure. (Stats. 2021, ch. 551, § 2.) As amended by Senate Bill 775, section 1172.6, subdivision (a) provides: "A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, *attempted murder under the natural and probable consequences doctrine, or manslaughter* may file a petition with the court that sentenced the petitioner to have the petitioner's murder, *attempted murder, or*

5

*manslaughter* conviction vacated and to be resentenced on any remaining counts when [certain] conditions apply." (Italics added.)

Section 1172.6, subdivisions (b) and (c) create a two-step process for evaluating a petitioner's eligibility for relief. (*People v. Lewis* (2021) 11 Cal.5th 952, 960-962 (*Lewis*).) The trial court first determines whether the petition is facially sufficient under section 1172.6, subdivision (b). (*Lewis*, at p. 960.) If the petition is facially sufficient, section 1172.6, subdivision (b) requires the trial court to appoint counsel (if requested) and follow the briefing schedule set forth in subdivision (c). (*Lewis*, at p. 966.) Following the completion of briefing, the trial court determines whether the petitioner has made a prima facie showing that he or she is entitled to relief. (*Ibid*.)

The California Supreme Court has explained that although "the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for . . . relief, the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citation.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citation.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Lewis, supra*, 11 Cal.5th at p. 971.)

We independently review the trial court's decision to deny a section 1172.6 petition at the prima facie stage. (*People v. Harden* (2022) 81 Cal.App.5th 45, 52.)

B

The trial court said defendant's record of conviction conclusively establishes he is guilty under valid theories of murder, and defendant admitted at the sentencing that he

6

was an aider and abettor to the voluntary manslaughter and attempted murders. The trial court added that the facts conclusively demonstrated that defendant was a major participant with reckless indifference because, among other things, he knew the victims, supplied information to codefendants about the victims' home, participated in planning the crimes, helped to arm codefendants with deadly weapons, and admitted the personal use of a deadly weapon.

We agree with defendant and the People that the trial court engaged in improper fact finding at the prima facie stage. Defendant's petition alleged each of the requirements for relief under section 1172.6, including that he "could not presently be convicted of murder or attempted murder because of changes to [s]ection 188 or 189 made [by Senate Bill 1437]." (§ 1172.6, subd. (a)(3).) The record of conviction does not conclusively refute those allegations.

"When the petitioner's conviction result[s] from a guilty plea rather than a trial, the record of conviction includes the facts 'the defendant admitted as the factual basis for a guilty plea.' [Citations.] However, the court may only consider facts the defendant stipulated to as part of the factual basis or otherwise admitted as true. [Citation.] '[A]llowing inquiry into the historical facts that may appear in the court's files but that were never admitted by the petitioner as the factual basis for a plea . . . would . . . convert the prima facie inquiry into a factual contest.' " (*People v. Gaillard* (2024) 99 Cal.App.5th 1206, 1211-1212 (*Gaillard*).)

Here, defendant's voluntary manslaughter and attempted murder convictions resulted from guilty pleas entered by defendant to avoid being retried for special-circumstance murder. The stated factual basis for the pleas was the evidence the trial court heard during defendant's murder trial. It appears the evidence showed defendant's culpability was based not on his personal participation in the events in the Fountain's backyard, but rather as an aider and abettor who drove his armed codefendants to the house and waited nearby while they executed the planned robbery. Thus, defendant

7

admitted being guilty of voluntary manslaughter and attempted murder as an aider and abettor. But that does not conclusively establish that section 1172.6 did not apply to defendant, because he did not stipulate to any particular theory of aiding and abetting liability and "section 1172.6 applies to those who could have been convicted of murder on a natural and probable consequences theory of aiding and abetting." (*Gaillard, supra*, 99 Cal.App.5th at p. 1212.)

Defendant's admissions that he personally used a deadly or dangerous weapon and personally inflicted great bodily injury also do not conclusively refute his allegation that he could not presently be convicted of murder or attempted murder. The admissions do not appear to be supported by the evidence, but in any event, there is nothing inherently inconsistent with a defendant using a deadly or dangerous weapon during an underlying crime, or inflicting great bodily injury during that crime, while at the same time lacking the malice required for murder or attempted murder liability. (*People v. Estrada* (2024) 101 Cal.App.5th 328, 338 (*Estrada*) ["bare admission of the enhancements for personal use of a deadly weapon . . . and infliction of great bodily injury . . . do not establish that [the defendant] acted with the intent to kill or refute that he was convicted on a theory of imputed malice"].)

Defendant's guilty pleas and admissions do not conclusively "establish that he acted with the malice required for conviction as a direct aider and abettor of murder [or attempted murder]." (*Gaillard, supra*, 99 Cal.App.5th at p. 1213; see *Estrada, supra*, 101 Cal.App.5th at p. 338.)

As for the trial court's conclusion that defendant was a major participant in the underlying armed robbery and acted with reckless indifference to human life, the conclusion appears to have been based on the trial court's recollection of the evidence adduced during defendant's murder trial. But as the People observed, the trial court engaged in "quintessential fact finding" that is "not permitted at the prima facie stage."

8

DISPOSITION

The trial court's order denying defendant's petition for resentencing is reversed, and the matter is remanded to the trial court with directions to issue an order to show cause and hold an evidentiary hearing on the petition.


_____/S/_____
MAURO, Acting P. J.


We concur:


_____/S/_____
RENNER, J.


_____/S/_____
BOULWARE EURIE, J.

9